**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LONNIE DONALDSON, ) | CASE NO. 1:11-CV-01035 |
| ) | |
| Petitioner, ) | JUDGE SARA LIOI |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| ROBERT REID, Sheriff ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |
| ) | |

Petitioner, Lonnie Donaldson ("Donaldson"), challenges the constitutionality of his impending retrial in the case of *State v. Donaldson*, Cuyahoga County Court of Common Pleas Case No. CR-07-502443. Donaldson, represented by counsel, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2241 on May 20, 2011.[1] On June 23, 2011, Sheriff Robert Reid ("Respondent") filed his Answer/Return of Writ. (ECF No. 21.) Donaldson filed his Traverse on July 25, 2011. (ECF No. 24.) Respondent filed a Reply on August 4, 2011. (ECF No. 25.) For reasons set forth in detail below, it is recommended that Donaldson's petition be DENIED.

---

[1] Respondent contends that Donaldson's petition should be considered under 28 U.S.C. § 2254 – not § 2241. (ECF No. 21 at 2.)

# I. Procedural History

## A. Jury Trial

On October 23, 2007, a Cuyahoga County Grand Jury charged Donaldson with one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A) together with a mass murder specification, a capital offense, and one count of attempted murder in violation of O.R.C. §§ 2903.02(A), 2923.02. (ECF No. 21-2.) The matter proceeded to trial beginning on December 2, 2009. (ECF No. 21-1 at 17.) On December 10, 2009, prior to the completion of trial, the judge, *sua sponte*, declared a mistrial over Donaldson's objection. (ECF No. 21-4; Tr. 694.)

On March 13, 2010, Donaldson, represented by new counsel, filed a Motion to Dismiss the Indictment with prejudice, arguing that his retrial was barred by the Double Jeopardy Clause. (ECF No. 21-5.) On May 18, 2010, in a Journal Entry without opinion, the trial court denied Donaldson's motion. (ECF No. 21-7.)

After a recusal, the case was transferred to a new judge. Donaldson filed a second Motion to Dismiss the Indictment with prejudice, arguing again that his retrial was barred by the Double Jeopardy Clause. (ECF Nos. 21-8, 21-10, 21-12.) On April 21, 2011, the new judge issued an opinion denying the motion. (ECF No. 21-13.)

## B. Direct Appeal

After the denial of his motion to dismiss on double jeopardy grounds, Donaldson did not file a direct appeal in state courts. He asserts that Ohio law does not allow an interlocutory appeal from such a ruling. (ECF No. 1 at 10.) "Ohio courts do not consider a denial of a motion to dismiss on double jeopardy grounds to be a final appealable order." *Gunnell v. Rastatter*,

2008 U.S. Dist. LEXIS 118428 at *9 (S.D. Ohio 2008) (*citing State v. Crago*, 53 Ohio St. 3d 243, 244, 559 N.E.2d 1353 (1990)). Respondent has not alleged that Donaldson failed to exhaust available state remedies or that his claim is defaulted. (ECF No. 21.) As such, the Court will address the merits of Donaldson's petition.

**C. Federal Habeas Petition**

On May 20, 2011, Donaldson filed a Petition for Writ of Habeas Corpus asserting one ground for relief: that he is being held in county jail awaiting a second trial after the court, *sua sponte*, declared a mistrial during his first trial. (ECF No. 1.) Donaldson argues that a second trial would violate the Double Jeopardy Clause of the United States Constitution. *Id*.

## II. Review on the Merits

The parties dispute whether this matter is governed by § 2241 or § 2254. (ECF No. 1 at 9; ECF No. 21 at 5-7; ECF No. 24 at 2-10.) In § 2254 cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996). Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from

-3-

[Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).[2]

While conceding that he has found no case law expressly holding that § 2241 rather than § 2254 applies to pretrial habeas petitions, Donaldson argues that this Court should not apply the deferential standards of review usually reserved for cases brought under § 2254. (ECF Nos. 1 at 9; 24 at 5-7.) By contrast, Respondent asserts that § 2254 should be applied because in *Klein v. Leis*, 548 F.3d 425, 431 at n. 4 (6th Cir. 2008), the Sixth Circuit Court of Appeals applied § 2254 to a pretrial petition. (ECF No. 21 at 5-6.) The *Klein* decision, however, expressly noted that it applied § 2254 because its applicability had not been challenged by the parties. Nonetheless, that court also observed that "[b]ecause § 2254 applies to those held 'pursuant to the *judgment* of a State court....' 2254(b)(1), a pretrial detainee ordinarily pursues habeas relief under § 2241." *Id.* (also noting that appellate courts in several other circuits have found that a pretrial detainee's § 2241 Double Jeopardy claims are not subject to AEDPA's deferential standards).

Although Donaldson's argument is more convincing because he is not in custody pursuant

---

[2] A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

to a state court's judgment and the applicability of § 2254 is actually in dispute, it is not entirely clear, based on *Klein*, what standard should apply to pretrial habeas petitions in the Sixth Circuit. This Court, however, need not decide which standard of review applies, as a second trial would not violate Donaldson's right against being placed twice in jeopardy for the same offense, even without applying the deferential standard of review usually given to state court opinions under § 2254. Under any circumstance, a trial judge's decision to declare a mistrial is entitled to some degree of discretion. *See, e.g., Renico v. Lett*, 130 S. Ct. 1855, 1863 (2010) ("trial judges may declare a mistrial 'whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity' for doing so [and] [t]he decision ... is left to the 'sound discretion' of the judge....") (citations omitted).

### A. Ground One: Double Jeopardy

In his sole ground for relief, Donaldson argues that a second trial would violate his right to not be placed twice in jeopardy for the same offense. (ECF No. 1.) Specifically, Donaldson asserts that the trial court, *sua sponte*, declared a mistrial despite the fact that there was no manifest necessity to do so. (ECF Nos. 1 & 24.) Donaldson avers that, even if his trial counsel were ineffective, the trial court should not have declared a mistrial prior to a verdict. (ECF No. 24 at 14.) Respondent disputes Donaldson's contention that defense counsel's ineffectiveness did not justify a mistrial, essentially arguing that it was the actions of the defense that necessitated the mistrial; and, therefore, barring a retrial on double jeopardy grounds would result in a substantial injustice. (ECF No. 21 at 11-22.)

#### 1. "Manifest Necessity" Standard

The constitutional protection against double jeopardy does not merely prohibit a second

trial after an acquittal. The United States Supreme Court has explained as follows:

> Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." *** Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona v. Washington*, 434 U.S. 497, 503-505 (1978) (footnotes omitted). Nonetheless, "[u]nlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Id*. at 505. An accused "claiming double jeopardy by reason of a second trial must show that there was no 'manifest necessity' for the trial court to grant the State's mistrial motion. And we stated that the trial court's judgment about the necessity is entitled to great deference, never more so than when the judgment is based on an evaluation of such factors as the admissibility of evidence, any prejudice caused by the introduction of such evidence, and the trial court's familiarity with the jurors." *Foster v. Gilliam*, 515 U.S. 1301, 1303 (1995); *Colvin v. Sheets*, 598 F.3d 242 (6th Cir. 2010) ("The Double Jeopardy Clause of the Fifth and Fourteenth Amendments bars retrial following a declaration of mistrial unless the defendant consented to the mistrial or there was a 'manifest necessity' for the mistrial.") Therefore, even though the mistrial in the present action was declared *sua sponte* by the trial court rather than on the State's motion, the manifest necessity standard is applicable. *See Harpster v. Ohio*, 128 F.3d 322, 328 (6th Cir. 1997) ("Because it is clear that petitioner objected to the declaration of mistrial, the central question in this case is

whether manifest necessity existed for the mistrial.")

### 2. Facts Surrounding the Trial Court's Mistrial Declaration

Based on this Court's own review of the transcript, the following facts are material to this matter:

On December 3, 2009, defense counsel[3] made the following representations to the court:

- They did not know whether they had any statements of witness Shannon Broome made to their investigator ("Mr. Turpin"). (Doc. No. 21-14; Tr. 3-4.)

- When asked by the trial court whether they had any other witness statements or notes in their possession, they indicated that they were unaware of any, save one by witness DeCarlo Lavender. *Id*. at 6.

On December 8, 2009, defense counsel made the following representations to the court:

- They spoke with a witness, Jahmil Young, in the courthouse hallway. Jahmil Young said he had conversations with county prosecutors dating back several months and gave a recorded phone interview to homicide detectives. (ECF No. 21-15; Tr. 319-20.) This hallway conversation was the first they ever heard of any recording. *Id*. at 322-23.

- They indicated that Jahmil Young told police detectives that he was shot at the scene of the relevant homicide rather than another location as he initially claimed. (ECF No. 21-15; Tr. 320.) Further, they indicated that such evidence was exculpatory but was not turned over by the prosecution. *Id*. at 320-21.

- The prosecutor indicated that he did not think it was the practice of homicide investigators to record telephone interviews with witness. However, he knew that such was the practice of defense counsel's investigator, Mr. Turpin. (ECF No. 21-15; Tr. 323.)

On December 9, 2009, the following occurred in the trial court:

- Defense counsel represented that they recently became aware of audio tape recordings of some witnesses made by their investigator, Mr. Turpin. (ECF No. 21-

---

[3] Donaldson was represented at trial by attorneys Jeffrey Saffold and Thomas Rein. (Doc. No. 21-14.) For simplicity's sake, they will be referred to collectively as "defense counsel."

16; Tr. 650.)

- Defense counsel, outside of court, had played portions of State witness Sandwria Young's statement for the prosecutor that was in direct contradiction to her testimony at an earlier preliminary hearing. (ECF No. 21-16; Tr. 652-53.)

- Defense counsel indicated that they had two such tapes in their possession, each approximately an hour long. They did not ask Mr. Turpin whether there were any other tapes. (ECF No. 21-16; Tr. 655-56.)

- When the trial court ordered defense counsel to allow the prosecutor to review the tapes, defense counsel indicated that they had no idea what was on the tapes and asked permission to hear them first, claiming they did not "want to defer to this type of investigator." (ECF NO. 21-16; Tr. 657-58.)

- After the prosecution made a motion to order Mr. Turpin to turn over his work file and all work product for an in camera inspection, defense counsel objected because reviewing the material might prejudice the judge in her role as the ultimate decision maker regarding the sentence of death, should the case proceed that far. (ECF No. 21-16; Tr. 660-61.)

- Later, defense counsel objected to turning over the audio recordings to the prosecutor on the basis of work product and attorney-client privilege. (ECF No. 21-16; Tr. 664-66.) The Court indicated that it was not asking for information subject to the attorney-client privilege, but was interested in those portions of the recordings that defense counsel had represented were inconsistent with prior testimony. *Id.* at 670-74. The trial judge instructed defense counsel to finish listening to the audio tapes and produce to her those portions that are inconsistent as represented. *Id.* at 676.

- After reviewing the tapes, defense counsel indicated that only three voices of witnesses who had already testified could be heard: Sandwria Young, James Thomas, and Asia Wallace.[4] (ECF No. 21-16; Tr. 678.)

- Defense counsel indicated that none of the witness statements on the recordings were consequential. (ECF No. 21-16; Tr. 678.) The statement by Sandwria Young – initially believed to establish that her preliminary hearing testimony was perjured – was actually hearsay, being a statement of another person that she merely repeated. *Id.* at 678-79. Counsel stated that they "may have caused a lot of alarm over nothing." *Id.* at 679.

---

[4] No mention is made of Jahmil Young, whose alleged recorded interview sparked the issue of defense counsel's ineffectiveness.

-8-

- The court established that the audio recordings were made by Mr. Turpin in February of 2008. (ECF No. 21-16; Tr. 680-81.) Counsel conceded that they did not learn about the tapes until the sixth day of trial. *Id.*

- Defense counsel asserted that Mr. Turpin provided them with memoranda outlining what the witnesses had said, but did not tell them that he had made audio recordings. (ECF No. 21-16; Tr. 682.)

- The court stated that it was concerned whether defense counsel was rendering effective assistance in light of the fact that counsel indicated that they learned new information from Jahmil Young the day before when they thought he had spoken with homicide detectives rather than their own investigator almost two years earlier. (ECF No. 21-16; Tr. 686.) The court openly wondered when ineffective assistance of counsel attaches and whether it could be cured on the sixth or seventh day of trial. *Id.*

- The prosecution suggested that the trial judge review the tapes to determine whether there were inconsistencies between the tapes and prior testimony. (ECF No. 21-16; Tr. 688-89.)

- There was also a discussion about defense counsel's initial claim – that they had learned of an exculpatory statement made to police by Jahmil Young , which the State did not turn over. (ECF No. 21-16; Tr. 689-93.) Defense counsel acknowledged that they had been mistaken, but argued that both parties already knew that Young had lied when he initially claimed he was shot at a location across town from the scene of the relevant homicide. *Id.*

- Defense counsel indicated that Donaldson did not desire a mistrial. (ECF No. 21-16; Tr. 694.) The trial court gave counsel until 7:30 the next morning to submit briefs on whether a mistrial should be declared due to defense counsel's performance. *Id.*

On December 10, 2009, the following occurred in the trial court

- The trial court indicated that it did not receive any legal memoranda from defense counsel. (ECF No. 21-16; Tr. 695.) The prosecution indicated that the trial court should examine the audio recordings and *voir dire* Mr. Turpin and any witnesses who appear in the recordings prior to declaring a mistrial. *Id.* at 696.

- Defense counsel reiterated their position that there was nothing new on the audio recordings that would have in any way impacted how the defense was conducted. (ECF No. 21-16; Tr. 697.)

The court ultimately found that defense counsel's performance was deficient, but made no specific finding that it was ineffective under the two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 21-16; Tr. 698-99.) The court explained that the presumption of competent representation[5] normally afforded counsel had been rebutted by the fact that: (1) defense counsel was unaware of and did not review relevant tape recordings of witnesses taken 22 months earlier until six days into trial; and by, (2) defense counsel's "ever changing report of what the tapes contain and what they mean and how they impact the trial." *Id.* at 699. The court noted that these deficiencies could not be classified as falling into the category of trial strategy. *Id.* at 702. The court also observed, however, that it could not determine whether the second prong of the *Strickland* standard, which requires a showing of prejudice, had been satisfied.[6] *Id.* at 700. The court noted that the *Strickland* test was designed for appellate courts that have the luxury of reviewing the record in hindsight. *Id.*

The court concluded that it could not "overlook" defense counsel's deficient performance and differing accounts of the information contained on the tapes. *Id.* Therefore, since there was no way to cure the performance issue, it had no choice but to declare a mistrial to ensure that Donaldson received a fair trial. *Id.* at 700-01. The court noted that the proposition advanced by the prosecution – an in-camera inspection of the audio recordings – was untenable, as the court

---

[5] Under *Strickland*, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

[6] To establish prejudice under *Strickland*, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

would be unable to determine if inconsistencies exist until the conclusion of the case, and that the review itself might call into question the court's ability to be fair and impartial during the remainder of the trial. *Id*. at 701. Finally, the court noted that it had explored all alternatives, but found that declaring a mistrial was manifestly necessary in order to ensure that Donaldson received a fair trial with effective assistance of counsel. *Id*. at 702-03.

### 3. Analysis

First, it bears noting that the "'manifest necessity' standard 'cannot be interpreted literally,' and that a mistrial is appropriate when there is a 'high degree' of necessity." *Renico*, 130 S. Ct. at 1863 (citations omitted). Furthermore, "[t]he decision whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge, a point that 'has been consistently reiterated in decisions of this Court.'" *Id*. (*citing Illinois v. Somerville*, 410 U.S. 458, 462 (1973); *Gori v. United States*, 367 U.S. 364, 368 (1961)). "The manifest necessity inquiry is a flexible one, with reviewing courts analyzing the trial court's exercise of discretion in light of the particular facts and circumstances of each individual case." *Harpster*, 128 F.3d at 328. In determining whether a manifest necessity existed, this Court should employ a "sliding scale of scrutiny," depending on the reasons for the mistrial. *Ross v. Petro*, 515 F.3d 653, 661 (6th Cir. 2008) ("The strictest scrutiny is employed when the mistrial was premised on bad-faith conduct by the judge or prosecutor, and the most relaxed scrutiny is employed when the mistrial was premised on a deadlocked jury.")

There is no allegation that the mistrial in this matter was occasioned by any conduct of the prosecution. Furthermore, while Donaldson clearly disagrees with the trial judge's decision, there is no allegation that the mistrial was based on bad-faith conduct by the judge. Therefore, a

more relaxed level of scrutiny should be applied to the trial court's determination. Donaldson asserts that his defense counsel's performance was not deficient, and points to defense counsel's assertions that they had all the relevant information contained in the recordings made by their investigator, Mr. Turpin, before trial commenced. (ECF No. 1 at 13.) However, this assertion is based solely on the final representations of defense counsel and is not necessarily consistent with the initial representations made to the court. Nonetheless, the record reflects that defense counsel, by their own admission, did not know what the tapes contained until they listened to them six days into trial. Thus, trial counsel did not know at the time trial commenced whether they had all the relevant information they needed to prepare an adequate defense.

It would be improper for this Court to substitute its judgment for that of the trial judge who witnessed defense counsel's demeanor and heard their statements first hand. *Colvin v. Sheets*, 598 F.3d 242, 255 (6th Cir. 2010) (finding that the district court improperly substituted its judgment for that of the trial court [and ] failed to recognize that the defense counsel's statement ... was akin to a deadlocked jury situation, subject to the most relaxed scrutiny.") The Court finds that the trial judge's determination – finding defense counsel's performance deficient – was not improper under the circumstances and was supported by the record. It is undisputed that defense counsel had no knowledge of the tapes existence until after the trial had commenced. Further, defense counsel's representations to the court changed as they learned more about the conduct of their own investigator.

Donaldson argues that defense counsel's failure to discover the tapes can only be ineffective "if the reason for not knowing about the tapes was objectively unreasonable." (ECF No. 24 at 19.) Perhaps that is so, however, defense counsel's failure to learn about the existence

-12-

of audio recordings of witnesses, made by their own investigator, until trial was already underway could easily be objectively unreasonable. "To make a reasoned judgment about whether evidence is worth presenting, one must know what it says." *Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011) ("While the point of the Sixth Amendment is not to allow Monday-morning quarterbacking of defense counsel's strategic decisions, a lawyer cannot make a protected strategic decision without investigating the potential bases for it.")  Thus, it cannot reasonably be argued that defense counsel's failure to learn of the tapes and their contents is accorded the deferential treatment ascribed to strategy decisions, as it is "particularly unreasonable to fail to track down readily available and likely useful evidence ..." *Id*. at 246.

The audio recordings in this matter were in the possession of defense counsel's own investigator and obtaining them would have entailed no burden whatsoever. The only explanation offered by counsel for their failure to discover the recordings is a "communication breakdown" between defense counsel and their investigator. (ECF No. 21-16; Tr. 682.) This breakdown is entirely attributable to defense counsel. As the Sixth Circuit Court of Appeals cautioned, federal courts reviewing a mistrial declaration "should be especially reluctant to second-guess the judgment of the trial court in cases where ... the conduct of the defendant's own lawyer causes a mistrial." *Colvin*, 598 F.3d at 255.

This Court must still address the issue of whether deficient performance by defense counsel in this case created a manifest necessity for a mistrial. Donaldson argues that, even where defense counsel is ineffective, the issue of whether a defendant was prejudiced cannot be determined until the trial is complete. (ECF No. 1 at 15-16.) Donaldson, relying on state court decisions from California, Iowa, Massachusetts, Alaska, and Maine, argues that the trial judge

-13-

should have allowed the case to proceed to a verdict, as only then can it be determined whether defense counsel was truly ineffective. *Id*.

Donaldson's reliance on *Carrillo v. Superior Court*, 145 Cal. App. 4th 1511 (Cal. App. 2006) is misplaced. Not only is the *Carrillo* decision non-binding, but that decision applied California law, explaining that "California provides its citizens a greater degree of protection against double jeopardy than that provided by federal law by placing limitations on what constitutes 'legal necessity.'" *Id*. at 1525. Thus, its holding has little, if any, bearing on the federal prohibition against double jeopardy or the manifest necessity standard articulated by the United States Supreme Court. In *State v. Harrison*, 578 N.W.2d 234 (Iowa 1998), the Iowa Supreme Court found that trial counsel was not ineffective, and the decisions on cross-examination were a matter of trial strategy. Therefore, the *Harrison* court found that there was no manifest necessity for a mistrial. It did not find that ineffectiveness of trial counsel could never justify a *sua sponte* declaration of a mistrial. *Id*. at 239 ("For a judge, *sua sponte*, to declare a mistrial because of perceived inadequacy of defense counsel is--and certainly should be--an extremely rare event.") Nor did *Commonwealth v. Phetsaya*, 663 N.E.2d 857 (Mass. App. Ct. 1996) find that ineffectiveness of trial counsel could never serve as the manifest necessity necessary to declare a mistrial. Noting that there was no "prescribed formula" for determining whether there exists a manifest necessity for a mistrial, the court observed that "even if ineffectiveness of counsel might be a sufficient justification for the declaration of a mistrial under some circumstances, that rationale does not withstand scrutiny here" because trial counsel was not ineffective. *Id*. at 861-862.

Finally, Donaldson relies on *Cross v. State*, 813 P.2d 691 (Alaska Ct. App. 1991) and *State*

*v. Friel*, 500 A.2d 631 (Me. 1985).  In *Cross*, the court found that the possibility that appellant "might claim error on appeal does not equate to manifest necessity; if a mistrial could be declared against the wishes of the accused every time potential error occurred, the constitutional protection against double jeopardy would become virtually meaningless."  Though the Court agrees that not every error by a defendant's attorney justifies a finding that counsel was ineffective, a determination can readily be made whether a trial judge's finding that trial counsel was deficient was reasonable in light of the facts and circumstances of the case.  The *Friel* court found that the trial court should resort to "less drastic measures" than a mistrial, and revoke trial counsel's appointment.  Holding a jury until new counsel can be appointed and brought up to speed, especially after six days of trial, is an impractical solution.

A hard and fast rule prohibiting the *sua sponte* declaration of a mistrial due to counsel's deficient performance until the final verdict is also impractical.  Here, the court recognized that finding prejudice before the conclusion of the trial was problematic.  Nonetheless, after finding defense counsel's conduct in not receiving the tapes until twenty-two (22) months after they were made and six days into trial was outside the range of competent assistance, the court, without finding prejudice therefrom, determined that there was no cure for what had transpired and that Donaldson could not receive a fair trial.  (ECF No. 21-16; Tr. 699-700.)  Though defense counsel's performance at trial was not among the most egregious examples of deficient representation, the trial court's determination was reasonable.

In the end, the court ruled that the deficient performance was not an issue regarding trial strategy, but revealed a clear and unambiguous error, the effect of which could not be determined without compromising the integrity of the trial.  *Id*. at 702.  As such, the court determined that

-15-

the ends of justice would be defeated if a mistrial were not declared. *Id*.

Furthermore, the court considered alternative courses of action. This included an in camera inspection of the audio recordings. *Id*. at 701. The court explained that such an inspection was not a viable option because: (1) it was an undue burden for the court to attempt to ascertain whether the information on the tape contained material inconsistencies, as that could not reasonably be determined until the trial was concluded; and, (2) a review of the tapes could compromise the court's ability to be fair and impartial during the sentencing and mitigation phases of the capital murder trial. *Id*. at 701-02. Both points are unassailable. The trial court is not similarly situated to defense counsel or the prosecutor, both of whom, if properly prepared, would have known all the facts that would likely come to light at trial. The Court, on the other hand, cannot readily determine how any single piece of testimony is consistent with other testimony until after the fact. Thus, even if the trial court opted to listen to the recordings, it is unclear whether the Court would have immediately understood the implication of the statements contained therein. Meanwhile, the trial court's second rationale clearly implicates defense counsel's argument, made while objecting to the trial court conducting an in camera inspection, *i.e.* that it might prejudice the judge. (ECF No. 21-16; Tr. 660-61.) Donaldson would have had the trial court ignore or overrule prior defense counsel's stated objections to the in camera inspection. On this point, the Court agrees with Respondent. *See, e.g., Ross v. Petro*, 515 F.3d 653, 668 (6th Cir. 2008) ("To fault the original trial judge, in hindsight, for failing to *voir dire* the jurors over the objections of both parties is a tactic that this court cannot countenance.")

Donaldson's final argument – that AEDPA is unconstitutional (ECF No. 24 at 39-40) – is moot. This Court considered Donaldson's claim under § 2241 and did not apply the deferential

"unreasonable application of clearly established federal law" standard from § 2254. As such, Donaldson's argument is without merit.

In conclusion, Donaldson has failed to point to any binding authority that suggests that a trial court's *sua sponte* declaration of a mistrial, based on a reasonable determination that defense counsel's performance was deficient, violates the Double Jeopardy clause. In the absence of such, the trial court's finding of a manifest necessity to declare a mistrial must stand.

### V. Conclusion

For the foregoing reasons, it is recommended that Donaldson's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: September 1, 2011

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**