UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LONNIE DONALDSON,** | ) | **CASE NO. 1:11CV1035** |
| | ) | |
| PETITIONER, | ) | |
| | ) | **JUDGE SARA LIOI** |
| vs. | ) | |
| | ) | |
| **ROBERT REID, Sheriff,** | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| RESPONDENT. | ) | |
| | ) | |

    This matter comes before the Court on the Report and Recommendation ("R&R") (Doc. 28) prepared by Magistrate Judge Greg White, who recommends dismissal of the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 by Petitioner Lonnie Donaldson ("Petitioner" or "Donaldson"). Petitioner has filed objections to the R&R (Doc. 29), to which Respondent has replied. (Doc. 30.) The Court has conducted its *de novo* review of the matters raised in the objections. Fed. R. Civ. P. 72(b)(3). For the reasons that follow, the objections are **OVERRULED**, the R&R is **ACCEPTED**, and the petition is **DISMISSED**.

**I.  BACKGROUND**

    The facts in this case are largely undisputed and are outlined thoroughly within the R&R issued by the Magistrate Judge. Petitioner does not object to the Magistrate's recitation of the facts, but only to his analysis thereof and his legal conclusions. Accordingly, the Court will **ADOPT** the factual and procedural background set forth in the R&R (Doc. 28 at 7-11) without alteration or addition.

    In order to provide context for the discussion herein, however, the Court will briefly relate the basic procedural events that give rise to the Court's ruling. In October 2007, a

Cuyahoga County Grand Jury indicted Petitioner on one count of aggravated murder (Ohio Rev. Code § 2903.01(A)) with a capital mass murder specification and a firearm specification (Ohio Rev. Code § 2941.145), and one count of attempted murder (Ohio Rev. Code § 2903.02(A), 2923.02), also with a firearm specification (Ohio Rev. Code § 2941.145). (Doc. 21-2.)

On December 2, 2009, Petitioner was brought to trial. A jury was impaneled on December 4, 2009. On December 10, 2009, the trial prematurely ended because of the trial judge's *sua sponte* declaration of mistrial over Petitioner's objections. (Doc. 21-4.) The mistrial was precipitated by defense counsel's revelation—six days into trial—that they had failed to discover and review audio recordings made by their own investigator some twenty-two months before. What is more, defense counsel gave differing accounts to the court of what the recordings contained. Specifically, defense counsel initially asserted that the recordings contained exculpatory or impeachment evidence, but later recanted these assertions after listening to the recordings in their entirety. (Doc. 21-4 at 3.) Because of this revelation and counsel's contradictory statements, the Court *sua sponte* declared a mistrial over the defendant's objection in the interest of protecting the defendant's right to effective representation and a fair trial.

In declaring a mistrial, the trial court indicated that it had "conducted a scrupulous search for alternatives," but found that "declaring a mistrial [was] manifestly necessary […] in order to ensure the guarantees of a fair trial and the effective assistance of counsel as required by the Constitution." (*Id*. at 4-5.) The trial court declined to make an actual finding of ineffective assistance or prejudice to Petitioner pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), because it found that such a conclusion could only be made in hindsight. (*Id.* at 2-3.)

2

On March 13, 2010, Petitioner filed a motion to dismiss the indictment with prejudice, arguing that the Double Jeopardy Clause barred a retrial. (Doc. 21-5.) The trial court denied the motion. (Doc. 21-7.) After a recusal by the trial judge, the case was transferred to a new judge, who considered Petitioner's renewed motion to dismiss the indictment on the same grounds. (Docs. 21-8, 21-10, 21-12.) On April 21, 2011, the newly assigned judge issued an opinion denying the motion. (Doc. 21-13.)

On May 20, 2011, Petitioner, who remained in state custody, filed a petition for writ of habeas corpus, asserting that a second trial would violate the Double Jeopardy Clause of the United States Constitution. (Doc. 1.) On September 1, 2011, the Magistrate Judge issued an R&R, recommending that the Court deny Donaldson's petition. The Magistrate Judge concluded that the state trial court's *sua sponte* declaration of mistrial was occasioned by manifest necessity—the deficient performance of defense counsel and a lack of viable alternative courses of action. Petitioner raises six objections to the R&R, discussed below.

**II. DISCUSSION**

**A. Standard of Review**

Under Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Because this action is brought under 28 U.S.C. § 2241 rather than § 2254, the parties dispute whether the post-judgment standard of review of state court decisions adopted in the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA") applies in this case.

Section 2254 of the AEDPA provides that a federal court:

3

> may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court' or (2) the state court's decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'

*Fleming v. Metrish,* 556 F.3d 520, 524-25 (6th Cir. 2009) (*quoting Taylor v. Withrow,* 288 F.3d 846, 850 (6th Cir. 2002) (quoting 28 U.S.C. § 2254(d)) (citation omitted)). The Sixth Circuit has explained that ordinarily a pretrial detainee pursues habeas relief under § 2241 instead of § 2254 because § 2254 applies to a person held "pursuant to the judgment of a State court [...]." *Klein v. Leis,* 548 F.3d 425, 430 n.4 (6th Cir. 2008) (quoting 28 U.S.C. 2254(b)(1)).[1] The Sixth Circuit, however, has not made a definitive ruling as to whether a § 2241 petition should be converted to a § 2254 petition where the state court enters judgment during the pendency of the federal habeas petition.

Recognizing this lack of controlling authority, the Magistrate Judge correctly concluded that regardless of which standard applies, the trial judge's decision to declare a mistrial is entitled to some degree of discretion. *See, e.g., Renico v. Lett*, 130 S. Ct. 1855, 1863 (2010). The Magistrate Judge then proceeded to consider Donaldson's claim under § 2241 and

---

[1] In *Klein*, since the applicability of the AEDPA had not been challenged, the court assumed it applied. However, the Sixth Circuit acknowledged that several other federal circuit courts have held that a pretrial detainee's § 2241 Double Jeopardy claims are not subject to the AEDPA's deferential standards. *Id.* (citing *Walck v. Edmondson,* 472 F.3d 1227, 1235 (10th Cir. 2007); *Stow v. Murashige,* 389 F.3d 880, 888 (9th Cir. 2004); *Gonzalez v. Justices of Boston Mun. Ct.,* 382 F.3d 1, 5-7 (1st Cir. 2004), *vacated on other grounds,* 544 U.S. 918 (2005)). The Sixth Circuit also noted that other courts have found that a subsequent conviction could mean that § 2254 and the AEDPA apply again. *Id.* (citing *Yellowbear v. Wyo. Attorney Gen.,* 525 F.3d 921, 924-25 (10th Cir. 2008) (converting a § 2241 petition to a § 2254 petition and remanding case where jury convicted petitioner during pendency of his federal habeas appeal); *Jackson v. Coalter,* 337 F.3d 74, 79 (1st Cir. 2003) (interim plea of guilty alleviated court of duty to determine whether § 2254 or § 2241(c)(3) applied); *but see Stow v. Murashige,* 389 F.3d 880 (9th Cir. 2004) (looking at detention as of "the time [the petitioner] filed his petition"); *Dickerson v. Louisiana,* 816 F.2d 220, 224 (5th Cir. 1987) ("Pre-trial petitions [...] are properly brought under 28 U.S.C. § 2241, which applies to persons in custody regardless of whether final judgment has been rendered and regardless of the present status of the case [...].")).

did not apply the deferential "unreasonable application of clearly established federal law" standard from § 2254.[2] Neither party has objected to this determination; therefore, this Court will conduct a *de novo* review pursuant to § 2241 of those matters properly objected to by Petitioner. Rule 72(b)(3); *see, e.g., Thomas v. Arn,* 474 U.S. 140, 147 (1985) ("The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.").

### B. Double Jeopardy and the Manifest Necessity Doctrine

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution commands that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," U.S. CONST. amend. V, and applies to state prosecutions through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784 (1969). The policy underlying this provision

> is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*United States v. Jorn,* 400 U.S. 470, 479 (1971) (citing *Green v. United States,* 355 U.S. 184, 188 (1957)). Embodied within this policy of finality is the accused's "valued right to have his trial completed by a particular tribunal […]." *Wade v. Hunter,* 336 U.S. 684, 689 (1949); *United States v. Cameron,* 953 F.2d 240, 243 (6th Cir. 1992). "The Double Jeopardy Clause, however, does not act as an absolute bar to reprosecution in every case." *United States v. Gantley,* 172 F.3d 422, 427 (6th Cir. 1999). In some circumstances, the defendant's right to have his case

---

[2] Because he did not apply its deferential standard, the Magistrate Judge rejected as moot Petitioner's argument that the AEDPA is unconstitutional.

resolved by a particular tribunal must "be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade,* 336 U.S. at 689 (unforeseeable circumstances may render completion of a trial impossible). When a mistrial has been declared, a defendant may be retried if, and only if, there is a "manifest necessity" for a mistrial, or the defendant requests or consents to a mistrial. *Pryor v. Bock,* 261 F.Supp.2d 805, 808 (E.D. Mich. 2003); *Cameron,* 953 F.2d at 243.

The U.S. Supreme Court first articulated the "manifest necessity" doctrine in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824). Pursuant to this doctrine, a mistrial should not be declared unless " 'there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.' " *Harpster v. State of Ohio*, 128 F.3d 322, 329 (6th Cir. 1997) (quoting *Perez*, 22 U.S. (9 Wheat.) at 580). The *Perez* approach "abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." *Illinois v. Somerville,* 410 U.S. 458, 462 (1973). Instead, *Perez* prescribes a case-by-case approach, taking into account all the facts and circumstances to determine whether there was a manifest (i.e., a "high degree" of) necessity for the mistrial declaration. *Harpster,* 128 F.3d at 328 ("The manifest necessity doctrine does not require us to find that the trial court had no alternative but to declare a mistrial."); *Cameron,* 953 F.2d at 244 (manifest necessity analysis is fact-intensive); *Perez,* 22 U.S. at 580 (the power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes").

"Although trial courts should be accorded deference in making [a] determination [of manifest necessity], they must employ sound discretion and must consider the defendant's

6

right to end his confrontation with the state through a verdict from the particular tribunal he faces." *Harpster*, 128 F.3d at 329. "Sound discretion exists where the trial judge acts responsibly and deliberately rather than irrationally or irresponsibly." *Klein*, 548 F.3d at 431 (quoting *Arizona v. Washington*, 434 U.S. 497 (1978)) (internal quotation marks omitted).

### C. The R&R

The R&R recommends that the habeas petition be dismissed because the trial court's *sua sponte* declaration of a mistrial survives the manifest necessity standard. The Magistrate Judge noted that the determination to declare a mistrial *sua sponte* over the objections of the defendant is within the broad discretion of the trial court. (Doc. 28 at 11) (citing *Renico*, 130 S. Ct. at 1863) (citations omitted)). The Magistrate Judge concluded that there is no allegation that the mistrial was the result of prosecutorial conduct, nor is there any allegation that the judge acted in bad faith, and thus the Magistrate Judge gave considerable deference to the state court's determination that defense counsel's performance was deficient. The R&R indicates that the defense counsel's failure to discover possibly exculpatory audio recordings, made by their own investigator, until trial was already underway, was objectively unreasonable conduct. (*Id*. at 12-13.) Further, the Magistrate Judge found that the trial court properly considered alternative courses of action before ordering a mistrial. (*Id*. at 16.) The Magistrate Judge distinguished the case law cited by Petitioner and concluded that it was neither binding, nor persuasive authority, for the proposition that a trial court must always resort to less drastic measures when faced with possible ineffective assistance. (*Id*. at 14-15.) Accordingly, the Magistrate Judge found no reason to conclude that a retrial of Petitioner following the trial court's *sua sponte* declaration of mistrial would violate the Double Jeopardy clause.

**D. Petitioner's Objections**

Petitioner has asserted several objections to the R&R:

1. The Magistrate Judge erred in ignoring the prejudice requirement of *Strickland v. Washington*;

2. The Magistrate Judge should have concluded that trial counsel was not ineffective under *Strickland's* two-prong standard;

3. The state trial court did not consider every alternative to mistrial, because the judge did not consider listening to the audio recordings;

4. The Magistrate Judge did not properly consider the case law cited by Petitioner;

5. Contrary to the R&R, the original defense counsel did not take inconsistent positions with respect to the audio recordings;

6. Listening to the tapes would not have prejudiced the trial judge; and

7. The Magistrate Judge mistakenly placed the burden of demonstrating manifest necessity on Petitioner.

**Objection No. 1**

Petitioner first objects that every judge, including the Magistrate Judge, that has addressed the propriety of the trial court's mistrial ruling has improperly ignored the prejudice prong of *Strickland v. Washington*, 446 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a defendant seeking to establish ineffective assistance of counsel must satisfy a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

> defense. This requires showing counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. According to Petitioner, his claim can be denied only if this Court holds that (1) he was prejudiced; (2) *Strickland* should be overruled because prejudice does not matter; or (3) *Strickland* does not apply to Petitioner. (Doc. 29 at 3.) Petitioner contends that there was no prejudice caused by any attorney errors in this case; and absent any prejudice, there can be no ineffective assistance.

The *Strickland* test was formulated for review of actions taken following the completion of trial. As was recognized by the trial court and the Magistrate Judge, there is no way of showing in the present case whether defense counsel's conduct would have prejudiced Petitioner's defense because a mistrial was declared. To demonstrate prejudice under *Strickland,* it must be shown that, but for counsel's errors, there is a reasonable probability that the *outcome* of the proceedings would have been different. *Strickland,* 466 U.S. at 694. The trial court correctly observed that it could not determine prejudice without knowing the outcome of trial.

This Court has not found any binding federal case law holding that a trial court must engage in a *Strickland* analysis before declaring a mistrial when faced with possible ineffective assistance of counsel. Indeed, such a rule would be untenable because, as one court observed:

> Substantial harm could result if, because of the double jeopardy clause, a court felt compelled to allow a trial to continue although the accused was not adequately represented. It would be inconceivable to require a trial judge to rely on the chance that a cold record will shock the conscience of an appellate court when an incipient miscarriage of justice is growing before his eyes.

*United States v. Williams*, 411 F. Supp. 854, 857-58 (S.D.N.Y. 1976) (denying defendant's motion to dismiss indictment on double jeopardy grounds where prior *sua sponte* mistrial ruling

was necessitated by defense counsel's failure to prepare for competency hearing and defense counsel made improper statements during opening). *See also State v. Moran*, 753 P.2d 333, 336 (Mont. 1988) (holding that manifest necessity standard, and not *Strickland* test, is to be applied by court reviewing a *sua sponte* mistrial ruling).

Moreover, the Supreme Court has "explicitly declined the invitation of litigants to formulate rules based on categories of circumstances which will permit or preclude retrial." *Jorn*, 400 U.S. at 480. Importing the *Strickland* test into the manifest necessity standard would create such a category and would effectively preclude retrial following a mistrial occasioned by ineffective assistance of counsel. Accordingly, the Court declines to hold that the prejudice prong of *Strickland must* be applied by a trial court in these circumstances. As outlined above, the standard upon review of a decision to order mistrial is whether the trial court executed sound discretion in finding a manifest necessity. *Klein*, 548 F.3d at 431. The Magistrate Judge applied this standard. Accordingly, Petitioner's first objection is **OVERRULED**.

### Objection Nos. 2, 3, 5 & 6

Because considerable overlap exists among Petitioners second, third, fifth and sixth objections, the Court will address the objections together. Petitioner's second and fifth objections relate to the trial court's determination that his defense counsel was ineffective. Petitioner's second objection is that the Magistrate Judge mischaracterized the failure of defense counsel to discover the tapes. Petitioner argues that, when viewed in the totality of the circumstances, his trial counsel was effective because it was reasonable for his counsel to rely on their investigator to convey all of the fruits of his investigation, and it was their professional judgment to review only the investigator's report and not all of the evidence comprising the

10

report. Petitioner's fifth objection is that defense counsel did not take inconsistent positions with respect to the tapes because their statements reflected the state of their knowledge of the tapes before and after they had listened to the tapes.

Petitioner's third and sixth objections relate to the available alternatives. In his third objection, Petitioner asserts that there could be no manifest necessity for mistrial when the trial judge failed to consider the easiest alternative—listening to the tapes in question. Petitioner argues that, to demonstrate manifest necessity, the state must show the judge had no alternative to a mistrial. According to Petitioner, had the trial judge listened to the tapes, she would have determined that defense counsel's performance was not deficient. Moreover, in his sixth objection, Petitioner asserts that, contrary to the trial judge's assertions, listening to the tapes would not have prejudiced her because defense counsel withdrew their objections after listening to the tapes and specifically requested that she review the tapes before declaring a mistrial.

In response, Respondent argues that, under the circumstances, the trial judge acted reasonably and within her sound discretion when she declared a mistrial. Respondent asserts that it was not reasonable for defense counsel to assume they had all of their investigator's evidence, especially when counsel was aware that their investigator was in the habit of recording his interviews with state witnesses. (Doc. 30 at 8.) Respondent asserts that defense counsel's position on the recordings, including their accusation that the state was withholding exculpatory evidence, was inconsistent with their stated assumption that their investigator's report accurately summarized all of the evidence in their possession. Finally, Respondent argues that the trial judge's reasons for rejecting the other alternatives are sound and mindful of defense counsel's

previous objections to the court listening to the tapes. The Court finds Respondent's arguments well taken.

The Court must accept the trial judge's determination of manifest necessity as long as that determination was reasonable, *see Somerville*, 410 U.S. at 459, even if the Court was presented with the question in the first instance and might well have been persuaded to continue with the trial. *See Washington*, 434 U.S. at 509-10. "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Gori v. United States*, 367 U.S. 364, 368 (1961). A judge is not required to make explicit findings regarding manifest necessity, so long as the record contains "sufficient justification for the state-court ruling[] […]." *Washington*, 434 U.S. at 517.

As outlined above, in determining whether manifest necessity exists, a trial court's decision to *sua sponte* order a mistrial is owed considerable deference so long as it was the result of sound discretion and made in consideration of the defendant's Double Jeopardy rights. *Harpster*, 128 F.3d at 329. The Sixth Circuit has outlined the following factors, which should be considered when ascertaining whether sound discretion was exercised by a trial court: (1) whether the trial judge heard the parties' opinions about the propriety of the mistrial; (2) whether the trial judge considered the alternatives to a mistrial; and (3) whether the trial judge acted deliberately, instead of abruptly. *Klein*, 548 F.3d at 432 (citing *Fulton v. Moore*, 520 F.3d 522, 529 (6th Cir. 2008)).[3]

---

[3] Further, as noted by the Magistrate Judge, the Court employs a "sliding scale of scrutiny," depending on the

12

Under the circumstances, the Court cannot conclude that the trial court's determination that defense counsel's performance was deficient was unreasonable, irresponsible or irrational. *See Klein*, 548 F.3d at 431. Defense counsel failed to review what they initially believed to be "exculpatory evidence" that was obtained by their own defense investigator roughly 22 months prior to trial. The trial court concluded that this failure was "outside the range of professionally competent assistance" and was "a clear and unambiguous error." (Doc. 21-4 at 3-4.) Further, defense counsel made varying representations to the trial court, which gave the trial court reason to doubt the ability of defendant to receive a fair trial. While Petitioner is in part correct that the discrepancies of defense counsel's statements may have been due to their listening to the tapes in the interim, this does not alter the fact that, at the time the trial commenced, defense counsel was unaware of whether they possessed all relevant information needed to prepare an adequate defense. Defense counsel's alleged confidence in their investigator's report is belied by their subsequent accusation that the prosecutor was withholding exculpatory evidence, especially in light of defense counsels' admission that they were aware of their investigator's habit of recording his interviews with state witnesses.

Further, as to the trial court's consideration of alternatives, the Sixth Circuit has explicitly held that "[t]he manifest necessity doctrine does not require [a reviewing court] to find that the trial court had *no alternative* but to declare a mistrial." *Harpster*, 128 F.3d at 328 (emphasis added). Instead, all that is required is a " 'high degree' [of necessity] before concluding that a mistrial is appropriate." *Id.* (quoting *Washington*, 434 U.S. at 506) (internal

---

reasons for mistrial. *Ross v. Petro*, 515 F.3d 653, 661 (6th Cir. 2008). In this case, noting the mistrial was not due to prosecutorial misconduct or ordered in bad faith, the Magistrate Judge determined that a more relaxed level of scrutiny applies. (Doc. 28 at 11-12.) Petitioner does not objection to this conclusion; therefore, the Court **ADOPTS** the Magistrate Judge's recommended level of scrutiny and will apply a more relaxed level of scrutiny to the trial court's mistrial determination.

quotation marks omitted). Here, the trial court, finding no available alternative, determined that Petitioner could not receive a fair trial and public justice could not be served without declaring a mistrial.

Contrary to Petitioner's arguments, the record reveals that the trial judge did in fact consider listening to the tapes. However, heeding the strenuous objections of defense counsel that the tapes could comprise her ability to remain impartial during the sentencing and mitigation phase, and noting the undue burden on the court of deciding whether any material inconsistencies could reasonably be found, the trial judge concluded that listening to the tapes was not a viable alternative to a mistrial. Moreover, contrary to Petitioner's assertions, his trial counsel did not waive their prior objections to the trial court hearing the tapes; it was the prosecutor, and not defense counsel, who urged the court to review the tapes prior to declaring a mistrial. (Doc. 21-16 at 696.) Further, the trial judge offered the parties the opportunity to submit written briefs addressing the propriety of a mistrial; indeed, the prosecutor submitted a brief opposing a mistrial, but defense counsel did not submit a brief opposing mistrial.

In light of the foregoing, the Court concludes that manifest necessity existed for the trial court's *sua sponte* mistrial ruling, and that the ruling was the product of sound discretion. *Klein*, 548 F.3d at 432. The trial judge heard the parties' opinions about the propriety of the mistrial; considered the alternatives to a mistrial; and acted deliberately, instead of abruptly, to protect the defendant's right to a fair trial. *See id.* at 432 (citing *Fulton v. Moore*, 520 F.3d 522, 529 (6th Cir. 2008)). Accordingly, Petitioner's second, third, fifth, and sixth objections are **OVERRULED**.

14

**Objection No. 4**

Petitioner's next objection is that the Magistrate Judge did not properly consider the case law cited by Petitioner. Although, Petitioner admits that the cases he has cited are not binding on this Court, he contends that they provide persuasive authority that discourages mistrials for ineffective assistance of counsel, and that the Magistrate Judge dismissed the cases without mention of the reasons why they were cited.

First, Petitioner cites a California appellate court that held that when a court cannot determine prejudice under *Strickland*, it must allow the case to go to its conclusion, because the effect of the error cannot otherwise be known. *Carrillo v. Super. Ct.*, 145 Cal. App. 4th 1511 (2006). The Magistrate Judge distinguished this case on the basis that California provides a greater degree of protection against double jeopardy than federal law, and what constitutes a legal necessity in California cannot bind this Court. The Court finds no error with this analysis. In *Carrillo*, the court acknowledged that, unlike the federal courts, the state of California places limits on what constitutes legal necessity. *Id.* at 1525. Rather than a "high degree" of necessity, the California courts have held that legal necessity can only be found in "extreme circumstances" and have limited mistrials for ineffective counsel to only three situations: complete absence of counsel; an ethical bar to representation; and an irreparable break in the attorney-client relationship. *Id.* at 1525, 1528. No federal court has adopted these limitations on manifest necessity; indeed, as noted above, the Supreme Court has "explicitly declined the invitation of litigants to formulate rules based on categories of circumstances which will permit or preclude retrial." *Jorn*, 400 U.S. at 480.

15

Next, Petitioner takes issue with the Magistrate Judge's reading of *State v. Harrison,* 578 N.W.2d 234 (Iowa 1998), which he argues holds that a case should be allowed to continue to a verdict even when a trial judge is correct in believing that defense counsel is ineffective. As the Magistrate Judge observed, however, that decision did not hold that ineffective assistance could *never* justify a mistrial, only that it should be an extremely rare event. Likewise, with regards to *Commonwealth v. Phetsaya*, 663 N.E.2d 857 (Mass. Ct. App. 1996), the court did not hold that ineffective assistance of counsel can never be remedied by a mistrial, but instead found, under the circumstances, that the trial judge's mistrial ruling did not meet the manifest necessity standard because the judge did not give careful consideration to any of the alternatives. 663 N.E.2d at 861-62. Similarly, in *Cross v. State of Alaska*, 813 P.2d 691 (Alaska App. 1991), the Court did not hold that ineffective assistance of counsel could never be the basis for a *sua sponte* mistrial. 813 P.2d at 696 (holding record did not support trial court's *sua sponte* mistrial ruling where judge failed to adequately explore alleged conflict and did not consider alternatives to mistrial). Finally, while the court in *State v. Friel*, 500 A.2d 631 (Me. 1985) did hold that courts should resort to less drastic options when counsel is removed for ineffectiveness, as with *Harrison, Phetsaya,* and *Cross,* the court did not foreclose altogether mistrial as a remedy. The Court declines to adopt such a categorical prohibition in this case.

In short, the Magistrate Judge correctly recognized the non-binding nature of the cases relied upon by Petitioner, and that none of the cases cited barred completely the *sua sponte* declaration of a mistrial due to ineffective assistance of counsel. More importantly, none of the case cited by Petitioner present the same factual scenario presented in this case. While this Court agrees that a *sua sponte* mistrial should be a rare event, where the trial court's decision was the

16

product of sound discretion, as is the case here, then the Court is hesitant to substitute its judgment for that of the trial judge who was better positioned to assess defense counsel's inability to represent Petitioner competently. *See Williams*, 411 F. Supp. at 858 ("It is sufficient […] that the trial judge had reasonable grounds to believe that justice would not be served by continuing the trial, and it is immaterial that with flawless hindsight less drastic means may appear to have been sufficient to cure the defect.") Accordingly, Petitioner's fourth objection is **OVERRULED**.

### Objection No. 7

Petitioner's final objection is that the Magistrate Judge improperly placed the burden of demonstrating manifest necessity on him instead of on Respondent. Petitioner finds support for his "improper burden" argument in a single sentence of the Magistrate Judge's R&R, but fails to place that sentence within the context of the opinion as a whole.[4] When the opinion is viewed in its totality, it is evident that the Magistrate Judge placed no burden on Petitioner.

In this case, the original trial judge, over Petitioner's objection, declared a mistrial. Although the official Journal Entry does not outline the trial court's reasons, *see* Doc. 21-4, the transcript of the proceeding fully reflects the reasoning; *see* Doc. 21-16 at 698-703.

"A judge who acts *sua sponte* in declaring a mistrial [...] must enable a reviewing court to confirm, that there is a " 'manifest necessity' " to deprive the defendant of his valued

---

[4] Magistrate Judge White stated,

> In conclusion, Donaldson has failed to point to any binding authority that suggests that a trial court's sua sponte declaration of a mistrial, based on a reasonable determination that defense counsel's performance was deficient violates the Double Jeopardy clause. In the absence of such, the trial court's finding of a manifest necessity to declare a mistrial must stand.

(Doc. 28 at17.)

17

right." *Renico v. Lett*, 130 S. Ct. 1855, 1867 (2010) (holding that trial court bears burden of demonstrating manifest necessity for *sua sponte* mistrial declaration). Where, as here, the facts and circumstances encountered by the trial court and counsel are largely undisputed, the question confronted is,

> one of law and discretion: whether the undisputed facts supported a finding of manifest necessity, such that a mistrial could be declared without prejudice to the state's right to reprosecute. [...] The focus is [...] *on the requirements of the Double Jeopardy Clause*.

*Ross v. Petro*, 515 F.3d 653, 663-64 (6th Cir. 2008) (emphasis added) (holding that in such a context, the "burden question is largely a matter of semantics").

The Magistrate Judge summarized and reviewed the entire record, including the arguments of Respondent and Petitioner; conducted a *de novo* analysis of the trial court's determination according to the controlling manifest necessity standard; and concluded that the trial court's mistrial ruling over the objection of the defendant was the product of sound discretion and, therefore, a retrial would not violate the Double Jeopardy clause. Thus, the burden was properly placed by the Magistrate Judge on the trial judge, and not on Petitioner, to show that manifest necessity existed for a mistrial.[5]

Accordingly, Petitioner's seventh objection is **OVERRULED**.

---

[5] To the extent that Petitioner offered arguments in opposition to such a conclusion, as outlined above, the Magistrate Judge properly concluded that those arguments lacked merit.

**III. Conclusion**

For all the foregoing reasons, the Court **OVERULES** the Petitioner's objections (Doc. 29), **ACCEPTS** the R&R of the Magistrate Judge (Doc. 28), and **DISMISSES** the petition (Doc. 1) for a writ habeas corpus relief.

**IT IS SO ORDERED**.

Dated: February 1, 2012

                                         **HONORABLE SARA LIOI**
                                         **UNITED STATES DISTRICT JUDGE**